Argued and submitted April 29, decision of the Court of Appeals and order of the Employment Appeals Board affirmed July 24, 1997

ABDUL ABU-ADAS,
and those listed on Appendix A of the
Employment Appeals Board order,
*Petitioners on Review,*

*v.*

EMPLOYMENT DEPARTMENT,
FOOD EMPLOYERS, INC.,
and Individual Employer Members of
Food Employers, Inc., and Safeway, Inc.,
*Respondents on Review.*

(EAB 95-AB-1473; CA A90650 (Control))

Taye ADDISU,
and those listed on Attachment A of the
Employment Appeals Board order,
*Petitioners on Review,*

*v.*

EMPLOYMENT DEPARTMENT,
FOOD EMPLOYERS, INC.,
and Individual Employer Members of
Food Employers, Inc., and Safeway, Inc.,
*Respondents on Review.*

(EAB 95-AB-1834; CA A90651)

Suzanne B. BELL,
and those listed on Appendix A of the
Employment Appeals Board order,
*Petitioners on Review,*

*v.*

EMPLOYMENT DEPARTMENT,
FOOD EMPLOYERS, INC.,
and Individual Employer Members of
Food Employers, Inc., and Safeway, Inc.,
*Respondents on Review.*

(EAB 95-AB-1952; CA A90652)
(SC S43780)

940 P2d 1219

Jeremy V. Sarant, Portland, argued the cause and filed the brief for petitioners on review.

Richard Wasserman, Assistant Attorney General, Salem, argued the cause for respondent on review Employment Department. With him on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Before Carson, Chief Justice, and Gillette, Van Hoomissen, Fadeley, Graber, and Durham, Justices.**

GILLETTE, J.

---

** Kulongoski, J., did not participate in the consideration or decision of this case.

## GILLETTE, J.

In these three unemployment compensation cases, consolidated for the purposes of administrative and judicial review, the Employment Appeals Board (EAB) denied petitioners' claims for unemployment compensation benefits.[1] The EAB ruled that, because petitioners were absent from work due to a "labor dispute," they were disqualified from receiving benefits under ORS 657.200(1), set out in the margin and *post* at 484.[2] The Court of Appeals affirmed without opinion. *Abu-Adas v. Employment Division*, 143 Or App 629, 924 P2d 877 (1996). We allowed review to determine whether ORS 657.200(1) applies in a case (such as the present one) in which not all the employees of a particular employer have been locked out. We hold that the statute does apply. We therefore affirm the decision of the Court of Appeals.

■ Petitioners are members of the United Food and Commercial Workers Union. They are employed by grocery stores that belong to a multi-employer collective bargaining group (the employer group). The group members agree to act collectively in labor matters.

Petitioners' union was in negotiation with the employer group for a new basic contract. Dissatisfied with the pace of negotiations, the union struck one of the members of the employer group, Fred Meyer, Inc. The other members of the employer group then responded to the union's action by locking out some of (but not all) their employees. Many of the union members (roughly 450 out of over 3800 union employees) were permitted to work, at least temporarily, either for

---

[1] The three cases are *Abu-Adas, Addisu,* and *Bell.* All the petitioners in each case are similarly situated, having been disqualified by the EAB from receiving unemployment compensation benefits because they were unemployed as a result of a "labor dispute." As we shall explain, that is the question that we find to be dispositive here. The petitioners in *Abu-Adas* also were disqualified from receiving benefits for an additional, procedural reason that we do not find it necessary to address in this opinion.

[2] ORS 657.200(1) provides, in part:

"An individual is disqualified for benefits for any week with respect to which the Director of the Employment Department finds that the unemployment of the individual is due to a labor dispute which is in active progress * * *."

the same employer at the same location or at other participating groceries.

A number of the locked-out employees (including the petitioners in this case) sought unemployment benefits. After an unemployment benefits hearing, an administrative law judge ruled that, pursuant to the disqualification in ORS 657.200(1) of persons who are unemployed because of a "labor dispute," petitioners were disqualified from receiving benefits. The judge rejected petitioners' argument that, because the lockout was only "partial," not complete, there was not a disqualifying "labor dispute" under the statute. The EAB and the Court of Appeals successively affirmed that determination.

As noted, ORS 657.200(1) provides, in part:

> "An individual is disqualified for benefits for any week with respect to which the Director of the Employment Department finds that the unemployment of the individual *is due to a labor dispute which is in active progress* * * *."

(Emphasis added.) To explicate the statute, the Employment Department has promulgated a rule, OAR 471-30-097, that defines "labor dispute." That rule provides:

> "The term 'labor dispute' as used in the Employment Department law means any concerted or deliberate action by two or more individuals or by an employing unit resulting in either a strike or lockout in which the wages, hours, working conditions or terms o[f] employment of the individuals are involved."

Petitioners do not deny that the foregoing definition in OAR 471-30-097 was validly adopted or that it may be applied to this case. Neither do they deny that the wages, hours, working conditions or terms of employment of employees of the various members of the employer group are involved. Their central contention is that the partial or selective choice by the employer group's members to lay off only some employees, while permitting others to continue to work, means that the employer group's action was not a "lockout." And, they argue, if there was not a "lockout," then they are not disqualified from receiving unemployment benefits.

We turn to the question whether petitioners were off work as a result of a "lockout," as that term is used in OAR 471-30-097. If they were, the rule makes their unemployment the result of a labor dispute, and they are disqualified from receiving unemployment compensation benefits.

■ ■     In determining the meaning of an administrative rule, this court's role is the same as its role in determining the meaning of a statute, *viz.*, to determine the meaning of the words used, giving effect to the intent of the enacting body. *Perlenfein and Perlenfein*, 316 Or 16, 20, 848 P2d 604 (1993); *see also PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993) (establishing template for conducting such an inquiry with respect to statutes and illustrating process). Our inquiry begins with an examination of the text of the rule itself. *Perlenfein*, 316 Or at 20. Also at that first level of analysis, the court considers the context of the rule. *Ibid.* Context includes other provisions of the same rule, other related rules, the statute pursuant to which the rule was created, and other related statutes. *See PGE*, 317 Or at 610-11 (describing analogous process with respect to statutes). If the enacting body's intent is clear after that inquiry, the court does not proceed further. *Id.* at 611.

When the foregoing inquiry is carried out in this case, there can be no real debate that petitioners' unemployment was caused by a "lockout" and, therefore, by a labor dispute. Petitioners' union was attempting to obtain a new collective bargaining agreement from the employer group; the union attempted to encourage movement by the other side by commencing a strike against one member of the employer group; the employer group responded by locking out most of its remaining workers. The rule specifically provides that a "lockout" is a labor dispute. The term is not qualified by any adjective, such as "complete," "total," "substantial," or the like. The unqualified text thus appears to defeat petitioners' theory.

Context supports the same conclusion. We have not found any contextual rule that aids our inquiry, but the statutory context is instructive. We note, first, that this court has held that, for the purposes of ORS 657.200(1), "a lockout is a labor dispute." *See Henzel et al v. Cameron et al*, 228 Or 452,

460, 365 P2d 498 (1961) (so stating). Moreover, ORS 657.200-(3)(a), which is concerned with how individuals may avoid the statutory labor dispute disqualification,[3] specifically recognizes that a lockout is a labor dispute.

Finally, further statutory context is provided by ORS 662.205(4), which defines "lockout." Under that statute, whose definition is cross-referenced in ORS 657.200(3), a "lockout" is

> *"any refusal* by an employer to permit *employees* to work as a result of a dispute with such employees affecting wages, hours or other terms or conditions of their employment."

(Emphasis added.) There can be no question that the facts of the present case fit that definition: An employer has refused to permit many employees to work as a result of a dispute over wages, hours, and other terms of employment.

■   Petitioners seek to avoid the consequence of the foregoing match between the definition and their situation by arguing that, in order for the situation in which they find themselves to be a "lockout," all, or "substantially all," of them must have been denied the opportunity to work.

We reject that argument, because it fails to take proper account of the wording of the definition itself. The definition in ORS 662.205(4) requires only that there be a "refusal" to allow "employees" to work. Neither the word "all" nor the phrase "substantially all" appears in the definition. Insertion of either would curtail the apparent scope of the definition. It is not the function of this court to insert in a rule what the enacting body has omitted, *see PGE*, 317 Or at 611 (stating principal with respect to statutes), yet that is precisely what we would be doing if we were to accept petitioners' argument.

Based on the foregoing analysis of text and context, we conclude that it is not necessary that the employer lock out all or substantially all its e.´ ployees in order for there to be a lockout. Petitioners' pivota´ :ontrary argument fails. The

---

[3] Petitioners do not assert that they ʋ ˙ld be entitled to unemployment compensation benefits by virtue of the provisiˑ of ORS 657.200(3).

meaning of OAR 471-30-097 in the present case is clear. Petitioners' unemployment falls within the statutory disqualification.

Petitioners advance other, related arguments that we shall discuss briefly. First, petitioners argue that the unemployment compensation laws are remedial in nature and, therefore, in doubtful cases should be construed in favor of conferring benefits. However, this is not a doubtful case. We have found the meaning of OAR 471-30-097 to be clear.

■ Petitioners further argue that denial of benefits conflicts with the policy of the law to "benefit people who become unemployed through no fault of their own." But the approach taken by the legislature in ORS 657.200(1) does not appear to be premised on fault at all. Rather, the statute is designed to keep unemployment compensation from altering the balance in economic negotiations between employer and employee. The rule does not depart from that purpose.

■ Finally, petitioners argue that, in determining their eligibility for benefits, the EAB, the Court of Appeals, and this court should consider their argument that the employer group has engaged in actions that would constitute an unfair labor practice under the National Labor Relations Act (NLRA), 29 USC sections 151-69. Petitioners are mistaken. Primary jurisdiction to determine whether there has been an unfair labor practice under the NLRA is vested in the National Labor Relations Board. It would be inappropriate for a state court or administrative agency to purport to determine such questions in the course of deciding a question of eligibility for unemployment benefits. *See New York Tel. Co. v. New York Labor Dept.*, 440 US 519, 530 n 15, 99 S Ct 1328, 59 L Ed 2d 553 (1979) (rejecting idea that it would be appropriate for state unemployment agencies to consider unfair labor practice arguments, because "such a rule would inevitably involve the States in ruling on the legality of strikes under § 8 [of the NLRA], * * * precisely the harms that the pre-emption doctrine is designed to avoid").

We hold that the EAB did not err in denying petitioners unemployment compensation benefits. The Court of Appeals' affirmance of the EAB order was correct.

The decision of the Court of Appeals and the order of the Employment Appeals Board are affirmed.