Argued and submitted March 17, 2009, affirmed March 10, 2010

# FRIENDS OF SAM CHASE,
*Petitioner,*

*v.*

# ELECTIONS DIVISION
# OF THE OFFICE OF THE SECRETARY OF STATE,
*Respondent.*

Elections Division of the Secretary of State
L8924; A136864

227 P3d 209

Brian J. Posewitz argued the cause and filed the briefs for petitioner.

Karla Ferrall, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Haselton, Presiding Judge, and Armstrong, Judge, and Ortega, Judge.

ARMSTRONG, J.

## ARMSTRONG, J.

The Oregon Secretary of State issued a final order imposing a civil penalty of $1,000 against petitioner Friends of Sam Chase, an election campaign committee, for electronically filing a supplemental campaign contribution and expenditure report 76 days after its due date. The secretary's determination that the report was 76 days late was based on an interpretation of *former* OAR 165-012-0230(11) (Aug 1, 2005)[1] that required an electronic report to successfully load into the secretary's data system in order to be considered filed for purposes of meeting the filing deadline. Petitioner seeks judicial review of that order, contending that the secretary erred in interpreting OAR 165-012-0230 and thereby erred in finding that petitioner's campaign finance report data was more than two days late. We conclude that the secretary did not err in interpreting OAR 165-012-0230, and we therefore affirm the order.

Petitioner is a campaign committee formed to support Sam Chase's candidacy for the Oregon State Senate in the 2006 election. The committee was required by law to file periodic campaign contribution and expenditure reports with the Oregon Secretary of State. *Former* ORS 260.058 (2005), *repealed by* Or Laws 2005, ch 809, § 56.[2] After exceeding $50,000 in campaign contributions and expenditures, petitioner was required to electronically file campaign contribution and expenditure reports. ORS 260.159(1); OAR 165-012-0230(4).

To comply with the electronic filing requirements, petitioner hired a company from a list provided by the secretary's Elections Division to format its contribution and

---

[1] All subsequent references to OAR 165-012-0230 are to that version of the rule, which was in effect at the time that petitioner was required to file the supplemental campaign contribution and expenditure report at issue in this case.

[2] In 2005, the legislature repealed many of the election statutes involved in this case and enacted a statute requiring a new electronic filing system for campaign finance reports. *See* Or Laws 2005, ch 809, §§ 14, 56, 57. Those provisions did not become effective until January 1, 2007, and, thus, do not apply to this case. All references to the campaign finance statutes are to the 2005 versions of them.

expenditure report data into the required electronic file format.[3] The petitioner was required to electronically file a supplemental contribution and expenditure report with the secretary by September 11, 2006. ORS 260.058(2); ORS 187.010(1)(a). Petitioner first attempted to electronically file the required report as an attachment to an e-mail note that it sent to the Elections Division shortly after 5:00 p.m. on September 12, 2006. The Elections Division's e-mail system returned an automatically generated response that stated, "Your filing has been received." Earlier on the day that petitioner sent its e-mail note with the attached report, the Elections Division had sent petitioner a notice informing it "of the potential for a civil penalty due to the late filing[.]"

On September 13, 2006, the Elections Division sent an e-mail note to petitioner's campaign manager stating that petitioner's report would not load into the Elections Division's computer system because "extra carriage returns [we]re in the detail records of the PC 2 and PC 3."[4] Throughout that day, the Elections Division and petitioner's campaign manager exchanged e-mail notes and continued to attempt to resolve the loading problem, but a modified version of the report sent by the campaign manager still would not load into the agency's database. On September 28, 2006, petitioner's campaign manager sent the Elections Division

---

[3] The Elections Division provided candidates with the names of known electronic filing software vendors and campaign finance reporting businesses; however, the *2006 Campaign Finance Manual* made clear that the agency was "not responsible for the quality or sufficiency of services provided by those vendors." Elections Division, Oregon Secretary of State, *2006 Campaign Finance Manual* 50 (2006). Effective December 30, 2005, the *2006 Campaign Finance Manual* was adopted by the secretary "as the procedures and guidelines to be used for compliance with Oregon campaign finance regulations." OAR 165-012-0005 (Dec 30, 2005).

[4] PC 2 and PC 3 refer to forms that were components of the required campaign finance reports. A "carriage return" is defined as a "line space lever." *Webster's Third New Int'l Dictionary* 343 (unabridged ed 2002) (typeface modified). In turn, a "line space lever" is defined as "the lever on a typewriter that operates the spacing ratchet and revolves the platen to a new line of writing and that is used to throw the carriage to a new line[.]" *Id.* at 1316. Elections Division staff explained during the contested case hearing that led to the order on review in this case that, if a "carriage return"—as the phrase is used in OAR 165-012-0230(5)(d)—is inserted into a data record field before the end of the record, "it throws it down onto another line with no page or line number reference and therefore it is unable to load it into the data base."

another version of the report, and the agency responded that the report still would not load. The agency explained:

> "We opened in [W]ord to review the formatting. The carriage returns should only be at the end of the field information for each line. It appears that you have paragraph returns in the middle of the data fields. So for Page 1, Line 1, it should be at the end only."

Candidate Chase first became aware of the Elections Division's difficulty loading his campaign committee's contribution and expenditure report when the Elections Division personally contacted him about it in December 2006. Ultimately, Chase resolved the formatting problem by working with an Elections Division staff member over the telephone to remove the extraneous carriage returns from the report. On December 29, 2006, Chase e-mailed the modified report to the Elections Division, which was successfully loaded that day.

The Elections Division subsequently sent petitioner a notice of proposed civil penalty that proposed to penalize petitioner $1,000 for filing its campaign finance report 76 days late, that is, on December 29, 2006. Petitioner requested and was granted a contested case hearing. After hearing the evidence and arguments, the hearings officer issued a proposed order that concluded that petitioner was only two days late in filing its report and, hence, should pay a penalty of $371.56.

Subsequently, the secretary issued a final order that superseded the proposed order. The secretary concluded in that order that the Elections Division correctly assessed a $1,000 penalty because, under "OAR 165-012-0230(11), an electronic report is not considered filed until it will successfully load into the Elections Division's data system. Consequently, by operation of the rule, [petitioner's] supplemental report is considered filed effective December 29, 2006, making the report 76 days late." Petitioner timely sought judicial review of the secretary's order.

■    Under ORS 183.482(8)(a), we are authorized to set aside an agency order if the agency's decision was based on an erroneous interpretation of law. We are required to

uphold an "agency's plausible interpretation of its own rule [if the interpretation is not] inconsistent with the wording of the rule itself, or with the rule's context, or with any other source of law[.]" *Don't Waste Oregon Com. v. Energy Facility Siting*, 320 Or 132, 142, 881 P2d 119 (1994).

■      As described above, petitioner was required to electronically submit a supplemental statement of campaign contributions and expenditures by a statutory deadline. ORS 260.058(2); ORS 260.159(1). The secretary's "electronic filing rule," OAR 165-012-0230, established the following standards and procedures for electronic submission of campaign finance reports relevant to this case:

> "(5)   Candidates and committees filing electronically must have their own software that they use to enter data. The software must be capable of generating final data for detailed contribution and expenditure reports, including forms PC 1, PC 2, PC 3, PC 4A, PC 4B, PC 5, PC 6, and PC 9. The information provided on the forms must fully comply with ORS Chapter 260 and the current Campaign Finance Manual. *To file reports electronically, the committee or candidate must export the data of the final contribution and expenditure report generated in its software into an ASCII tab-delimited file that is formatted with the following file format specifications. Reports not corresponding to the required file format will not be considered filed.*

> "(a)   All reports must correspond to the required file format. (Attachment 1 to this rule);[5]

> "(b)   The character set must be ASCII.

> "(c)   Files must have been created by or be readable by an operating system that is compatible with Microsoft Windows 95 or higher.

> "(d)   Records must end with a carriage return ASCII character (CR) followed by a line feed ASCII character (LF).

> "* * * * *

---

[5] Attachment 1 to the electronic filing rule contained numerous detailed file format specifications for campaign report data (for example, field type, field length, and allowable values) that were not described in the text of subsection (5).

"(7) *Reports must be submitted in one of the following formats*, and must be received by 5:00 p.m. on the filing deadline *to be considered filed timely*:

"(a)  3-1/2-inch high-density MS DOS-formatted diskette; or

"(b)  PC-readable CD; or

"(c)  Attached to an e-mail to elecfile.sos@state.or.us

"* * * * *

"(9) *Electronic reports must not contain viruses.* The Election Division's computer system will screen and reject all reports filed electronically that are detected to contain viruses. *Any report rejected for this reason is considered not filed.*

"* * * * *

"(11)  Unless the committee or candidate required to file electronically is excused by the Secretary of State under subsection (3), *a report is not considered filed until it is successfully filed electronically.* Attachment 1 contains the required file format specifications for electronic filing."

(Emphasis added.)

On review, petitioner contends that the secretary erred in finding that its campaign finance report was filed 76 days late instead of only two days late. Petitioner argues that (1) the electronic filing rule did not make "filing" contingent on "loading" in the secretary's database, (2) the report that it submitted on September 12, 2006, satisfied all of the file format specifications prescribed in the electronic filing rule, and (3) the secretary's interpretation of subsection (11) of the rule effectively creates an additional "technical specification" for electronic filings that the agency failed to properly adopt by rule as required by ORS 260.159(4).

The secretary responds that the final order was not issued in error because petitioner's initial submitted report did not conform to the technical specifications in subsection (5)(d) of the rule and, thus, was not "successfully filed electronically" as required by subsection (11). The secretary further argues that the order reasonably interpreted the requirement that campaign finance reports be "successfully

filed electronically" under subsection (11) to mean that the reports comply with the rule's technical specifications, and, therefore, be able to load into the Elections Division's database.

Review of the secretary's final order indicates, however, that it was not based on a finding that petitioner's report failed to be "successfully filed electronically" because it violated one of the technical requirements in paragraph (d) of subsection (5). Rather, as we will explain, the secretary's finding of a violation was based solely on subsection (11).

Nowhere in the final order does it state that petitioner's initially submitted report violated the file format specifications in paragraph (d) of subsection (5), let alone make a finding that it did. To the contrary, the secretary found that petitioner's report "records ended with a carriage return ASCII character (CR) followed by a line feed ASCII character (LF)," thus, restating language in subsection (5)(d) and indicating compliance with it. The secretary did note in the order that, "[i]f the report is not filed with the proper file format specifications, it will not load successfully into the Elections Division electronic filing system"; however, the order did not explain if or how the extraneous carriage returns in petitioner's report failed to comply with the file format specifications, causing the report to fail to load. Instead, the secretary interpreted subsection (11) to mean that "an electronic report is not considered filed until it will successfully load into the Elections Division's data system[,]" and found that, "by operation of the rule," petitioner's report was therefore 76 days late.

Furthermore, subsection (5) provided an independent basis for the secretary to deem petitioner's initially submitted campaign finance report not to have been filed on September 12. The introductory paragraph of subsection (5) specifically stated that "[r]eports not corresponding to the required file format will not be considered filed." That the secretary relied on subsection (11) as the basis for the violation, instead of relying on subsection (5), confirms that the final order was not based on petitioner's failure to timely file a report conforming to the specifications identified in subsection (5). Accordingly, we conclude that the order was based

solely on subsection (11) and not on any failure of the report to adopt the file format required by subsection (5), despite the secretary's contrary contention.

Our analysis in this case thus turns on whether the secretary's interpretation of subsection (11) to require campaign finance reports to load into the Elections Division's database in order to be "successfully filed electronically" is entitled to such deference as to validate the secretary's determination that petitioner's report was 76 days late. Again, the crux of that analysis requires us to determine whether the secretary's interpretation of subsection (11) was plausible and not inconsistent with the text of the rule and the rule's context. *Don't Waste Oregon Com.*, 320 Or at 142. If the interpretation was plausible, then we are bound by it in our review of the secretary's order. *Id.*; *ONRC Action v. Columbia Plywood, Inc.*, 332 Or 216, 222, 26 P3d 142 (2001).

Subsection (11) stated that, if a candidate was required to file a campaign finance report electronically, the report would not be "considered filed until it is *successfully* filed electronically." (Emphasis added.) By its terms, then, subsection (11) required something more than mere delivery of campaign finance data in order for a report to achieve filed status. Specifically, it required the satisfaction of a condition—that is, that the electronic filing be successful. The secretary has interpreted "successfully" to mean that the report was able to load into the Elections Division's data system. In contrast, petitioner contends that " 'successfully' means complying with the requirements set forth in the Secretary's lengthy and numerous specific rules." Petitioner's interpretation, however, would render subsection (11) redundant. That is because other provisions of the rule referenced by petitioner *independently* conditioned the filed status of submitted campaign finance reports on satisfaction of their requirements. For example, subsection (5) explained that "[r]eports not corresponding to the required file format [would] not be considered filed." OAR 165-012-0230(5). Likewise, subsection (9) provided that any report that contained a virus would be rejected and not considered filed. OAR 165-012-0230(9). Hence, the secretary's interpretation of subsection (11)

avoids treating it as a redundant provision; rather, it provides specific meaning to the word "successfully" and, thus, is plausible.

Furthermore, the secretary's interpretation of subsection (11) was consistent with the formally adopted procedures and guidelines for electronic filing prescribed in the *2006 Campaign Finance Manual*. *See* OAR 165-012-0005 (Dec 30, 2005) (adopting the *2006 Campaign Finance Manual*). The sections of the secretary's *2006 Campaign Finance Manual* regarding electronic filing essentially restated the requirements of the electronic filing rule. *See* Elections Division, *2006 Campaign Finance Manual* at 50-51, 130-31. However, the secretary did provide the following additional advice to campaign committees:

> "A committee intending to create its own method of filing electronically is advised to contact the Elections Division for the technical specifications for electronic filing and a set of test reporting data, or to download this information from the Division's website at www.sos.state.or.us/elections/c&e/ elecfile.htm. The test data may be entered into the committee's reporting software, exported into the required format and submitted to the Division (via e[-]mail or disk) for review."

*Id.* at 50. The implication of that advice is that the secretary would determine and notify candidates whether their electronic filing software properly formatted the voluntarily processed test data so that it was capable of loading into the Elections Division's data system. Thus, the secretary's interpretation of subsection (11) is consistent with the guidance provided by the *2006 Campaign Finance Manual*.

■       Finally, we look to the electronic filing rule's authorizing statutes for context to determine whether the secretary's interpretation of subsection (11) is inconsistent with them. *Abu-Adas v. Employment Dept.*, 325 Or 480, 485, 940 P2d 1219 (1997). The secretary promulgated OAR 165-012-0230 pursuant to the agency's general rulemaking authority under ORS 260.156(1)[6] and its specific authority over electronic filing under ORS 260.159(4), which required that

_____

[6] ORS 260.156(1) states, in relevant part, that the "Secretary of State may adopt rules for the manner of determining and reporting expenditures and contributions under this chapter[.]"

"[s]tatements filed electronically * * * shall conform to the technical specifications for electronic filing prescribed by the Secretary of State by rule." Petitioner argues that the secretary's interpretation of subsection (11) conflicts with ORS 260.159(4) because it imposes an additional technical specification that was not expressly prescribed by rule. That argument is unavailing, however, because there is no conflict.

ORS 260.159(4) established a minimum condition that electronically filed campaign finance reports were required to satisfy: conformance to the technical specifications provided in the secretary's electronic filing rule. That statutory provision in no way prevented the secretary from imposing *additional* reporting obligations, as the secretary did here, consistent with the secretary's authority under ORS 260.156(1) to adopt rules for reporting campaign expenditures and contributions. The secretary's interpretation of "successfully filed electronically" did not impose a technical specification; rather, it required a result (that is, loading into the Elections Division's data system) that must be achieved by those filing campaign finance reports electronically *in addition* to compliance with the technical specifications stated in the electronic filing rule. Thus, the secretary's interpretation of subsection (11) placed the ultimate burden on those filing reports to ensure that their campaign finance data would accurately and efficiently be made available to the public,[7] and did so in a manner that did not conflict with either ORS 260.159(4) or ORS 260.156(1).

In sum, the secretary's interpretation of OAR 165-012-0230(11) is plausible, and, thus, we are bound by it. *Don't Waste Oregon Com.*, 320 Or at 142. Therefore, we conclude that the secretary properly interpreted and applied that provision in determining that petitioner's supplemental contribution and expenditure report was 76 days late and subject to a $1,000 penalty.

Affirmed.

---

[7] As the secretary explained in the *2006 Campaign Finance Manual*, "[t]he goal of Oregon campaign finance laws is to provide full and accurate disclosure to the public in a timely manner." Elections Division, *2006 Campaign Finance Manual* at 50.