IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Income Tax

MICHAEL G. HELMS,                        )
                                         )
            Plaintiff,                   )    TC-MD 110930N
                                         )
     v.                                  )
                                         )
DEPARTMENT OF REVENUE,                   )
State of Oregon,                         )
                                         )
            Defendant.                   )    **DECISION**

Plaintiff appealed Defendant's Notice of Deficiency Assessment, dated August 2, 2011, for the 2009 tax year. A trial was held in the Tax Courtroom on May 22, 2012. James C. Griggs and Amy E. Geerhart, Attorneys at Law, appeared on behalf of Plaintiff. Plaintiff testified on his own behalf. Glen Crouch (Crouch), certified appraiser, MAI, and Earl Doman (Doman), certified public accountant, testified on behalf of Plaintiff. Kevin Cole (Cole) appeared on behalf of Defendant, but did not testify. The parties filed a document entitled Stipulation of the Parties (Stip Facts) on May 17, 2012. Plaintiff's Exhibits 1 through 29 were offered and admitted without objection.[1] Defendant's exhibits labeled A through G were timely exchanged but were not offered into evidence.

## I. STATEMENT OF FACTS

At issue in this appeal is Plaintiff's gain on the sale of four parcels of real estate by the Helms Bros Partnership (Helms Bros), for $6 million on September 1, 2009. Plaintiff is a 50 percent partner in Helms Bros. The four parcels of real estate are identified by the parties as the Home property; the Bentz or Home Bottom property; the Land Conservation property; and the Miller property. (Stip Facts at 1.) The parcels will be referred to collectively as Helms

---

[1] Plaintiff's Exhibit 16 is a corrected exhibit.

Bros property. Prior to the September 1, 2009, sale, "[t]he four parcels of real estate [were] owned by Helms Bros Partnership and rented for use in the farming business of Green Delta Farms, LLC[.]" (*Id.*)

A.    *The Helms entities and activities*

Helms Bros is a partnership between Plaintiff, Steven E. Helms, and Steven C. Helms. (Stip Facts at 1; Ptf's Ex 1.) Plaintiff testified that Steven E. Helms is his brother and they formed Helms Bros as a 50-50 partnership in 1965. He testified that they registered Helms Bros in 1992. (Ptf's Ex 4 at 1.) Plaintiff testified that Steven E. Helms split his share with his son, Steven C. Helms. In of 2009, the year of sale, Steven E. Helms became a 40 percent partner and Steven C. Helms a 10 percent partner; Plaintiff remained a 50 percent partner.

Plaintiff testified that he, Steven E. Helms, and Steven C. Helms formed Green Delta Farms, LLC (Green Delta) in 2004 to conduct farming activities and to shield Helms Bros from any liability associated with Green Delta's farming activities. (Ptf's Exs 1 at 1, 5 at 1.) Green Delta is owned by MGJR, Inc. (50 percent); SEH, Inc. (40 percent); and SCH, Inc. (10 percent). (*Id.*) Plaintiff testified that MGJR, Inc. is 100 percent owned by Plaintiff; SEH, Inc. and SCH, Inc. are owned by his brother and nephew, respectively. (*See* Stip Facts at 1; Ptf's Exs 1 at 1, 2.)

Plaintiff testified that he, Steven E. Helms, and Steven C. Helms formed Helms Farms, Inc. ("Helms Farms") in 1987 to serve as a "paymaster" for the farm employees and to shield Helms Bros and, subsequently, Green Delta, from liability for employment claims. (*See* Ptf's Ex 3.) Plaintiff testified that, prior to the sale of the Helms Bros property on September 1, 2009, the arrangement was as follows: Helms Bros owned the Helms Bros property and leased it to Green Delta; Green Delta farmed the Helms Bros property, growing grass and turf seed as well as blueberries; and Helms Farms hired and paid the farm employees. He testified that Green

Delta would deposit funds weekly for Helms Farms to distribute to employees; Helms Farms did not charge a fee to Green Delta for its service as "paymaster."

Plaintiff and Doman both testified that each "Helms entity" is a separate legal entity with separate books, records, bank accounts, and tax returns. (*See, e.g.,* Ptf's Exs 16 - 20.) Plaintiff testified that Helms Bros' only assets were the Helms Bros property and some farm equipment; its only business activity was leasing the four parcels for farming. Plaintiff testified that, after the September 1, 2009, sale of the Helms Bros property, Helms Bros did, essentially, "nothing[;]" it did not engage in any farming or business activities. He testified that Helms Bros still owns some old farm equipment, all of which was acquired before 2004, but it has not been able to sell any of that equipment due to its age. Plaintiff testified that all farm equipment purchased after 2004 was purchased by Green Delta. He testified that Helms Farms has not employed anyone since September 1, 2009. "Neither [Plaintiff], Steve E. Helms, Steve C. Helms, nor any Helms related entity has operated any form of farming business from the Helms Bros' real estate at any time after the Sale Date." (Stip Facts at 2; *see also* Ptf's Ex 6.)

Plaintiff testified that, since September 1, 2009, Green Delta has started a business that buys straw from farmers and then resells the straw to a business that "compresses" it. He testified that he does not participate in Green Delta's straw business; rather, Steven C. Helms primarily runs that business. Plaintiff testified that he does not consider the purchase and resale of straw to be "farming." However, Plaintiff concedes that the activity is "farming" for purposes of Green Delta's Schedule F.

Green Delta reported gross income of $2,551,765 on its 2009 Schedule F and gross income of 1,307,434 on its 2010 Schedule F. (Ptf's Exs 17 at 6; 18 at 6.) Doman testified that the period of Green Delta's 2009 return was June 1, 2009, to May 31, 2010, and the period of

Green Delta's 2010 return was June 1, 2010, to May 31, 2011. He testified that Green Delta's 2009 return reported income, in part, from farming activities on the Helms Bros property as well as $416,416 in income from the sale of equipment. (*See* Ptf's Ex 26 at 1.) Doman testified that Green Delta's 2009 farm income included income from the sale of "bear grass" and "annual rye grass," both of which may be sold years after they are harvested. (*See id.*) Plaintiff testified that grass seed buyers pay grass seed farmers when the buyers are able to sell the seed. He testified that, as of September 2009, payments for seed sold in 2007, 2008, and 2009 were outstanding. Plaintiff testified that, after September 2009, Green Delta did not produce any new seed.

B.     *Sale of Helms Bros property on September 1, 2009*

Plaintiff testified that Riverbend Organic Farms (Riverbend), which bears no relationship to Plaintiff or any of the Helms entities, purchased the Helms Bros property on September 1, 2009, for $6 million, total. (*See* Ptf's Exs 6, 7.) Plaintiff testified that Helms Bros decided to sell the Helms Bros property because it had accumulated significant debt to "Townsend," its processor, and was going to lose financing. He testified that Helms Bros was left with no other option than to "liquidate" the Helms Bros property. Plaintiff testified that the sale to Riverbend included blueberry farming equipment owned by Green Delta; the total value of that equipment was $161,000. (Ptf's Ex 8 at 3; Ex 7 at 1 (pay off to Green Delta for personal property).)

The parties stipulated to the original cost of each of the four parcels: $679,428.60 for the Home property; $315,000 for the Bentz or Home Bottom property; $43,050 for the Land Conservation property; and $600,000 for the Miller property. (Stip Facts at 1; Ptf's Exs 10, 11, 12, 13.) Doman testified that he revised the cost basis in the Miller property to $480,000 because he discovered that the $600,000 basis originally reported included $120,000 of equipment. (*See* Ptf's Ex 29 at 1.) Plaintiff testified that the Home property included a shop, office, various

outbuildings, and a residence previously used by Steven C. Helms. He testified that it is the only parcel that included improvements. Plaintiff provided Linn County property tax statements for the 2008-09 tax year for each of the four parcels. (Ptf's Ex 21.) The 2008-09 improvements real market value of the Home property was $424,290. (*Id.* at 1.)

Plaintiff concedes that the gain from the sale of the farm dwelling is not entitled to the farm capital gains rate under ORS 316.045. Plaintiff testified in detail describing each of the improvements on the Home parcel, including: the "Owner Residence" where Steven. C. Helms had lived; the "Forman Residence," where farm laborers lived; and various outbuildings, which included the "Shop," "Office" and other improvements such as the "Pool" and "Ball Court." (*See* Ptf's Ex 27 at 17.) Plaintiff testified that many of the structures, such as the pool and ball court, are very old and of no use to Riverbend. He testified that the pool is a pit with plastic lining and the ball court is a 30 by 30 foot area that was previously used for dog kennels and now has a basketball hoop on it. Plaintiff testified that Riverbend priced the four parcels based on acres planted with blueberries and acres not planted with blueberries; no value was given to the pool or ball court, for instance. He testified that the only structures that Riverbend intended to use were the office, the shop, and the residence, for an on-site manager.

Crouch testified that he specializes in appraising rural and farm properties. He provided an appraisal report in which he determined the market value of the farm residence and a 1.1 acre homesite located on the Home property to be $200,000 as of September 1, 2009. (Ptf's Ex 27 at 1, 5.) Crouch testified that the property appraised did not include the Forman House, the shop, or the office, which still have use to the farming operation. He testified that he does not believe that the ball court or pool have any value. Crouch testified that his valuation was "hypothetical" because the 1.1 acre homesite cannot be sold separately from the rest of the property. He

testified that the Linn County property tax statement for the 2008-09 tax year included an improvements real market value of $424,920 for all of the structures located on the Home property. (*Id.* at 13.) Crouch testified that he attributed more value to the office and shop because they are both newer than the farm residence and useful to the farm operation. He testified that he relied on the cost and sales comparison approaches. (*Id.* at 31.)

Doman testified that he calculated the total gain on the sale of the four farm parcels to be $3,867,489, excluding the $200,000 value of the farm residence and 1.1 acre homesite; the $161,000 of equipment owned by Green Delta; the total farm basis of $1,517,479; and the total "expense of sale" of $254,032. (Ptf's Ex 29-1.) Doman testified that, because Plaintiff is a 50 percent partner in Helms Bros, he determined a gain to Plaintiff of $1,933,745 for the farm property and $100,000 for farm residence and 1.1 acre homesite. (*Id.*)

## II. ANALYSIS

The issue is whether Plaintiff's gain from the September 2009 sale of the Helms Bros property is entitled to the five percent tax rate under ORS 316.045.[2] ORS 316.045(2) states:

> "Notwithstanding ORS 316.037, taxable income that consists of net long-term capital gain shall be subject to tax under this chapter at a rate of five percent if all of the following conditions apply:
>
> > "(a) The gain is:
> >
> > > "(A) Derived from the sale or exchange of capital assets consisting of ownership interests in a corporation, partnership or other entity in which, prior to the sale or exchange, the taxpayer owned at least a 10 percent ownership interest; or
> > >
> > > "(B) Section 1231 gain.
> >
> > "(b) The property that was sold or exchanged consisted of:

/ / /

---

[2] All references to the Oregon Revised Statutes (ORS) and Oregon Administrative Rules (OAR) are 2007.

"(A) Ownership interests in a corporation, partnership or other entity that is engaged in the trade or business of farming; or

"(B) Property that is predominantly used in the trade or business of farming.

"(c) The sale or exchange is to a person who is not related to the taxpayer under section 267 of the Internal Revenue Code.

"(d) The sale or exchange constitutes a substantially complete termination of all of the taxpayer's ownership interests in a trade or business that is engaged in farming or a substantially complete termination of all of the taxpayer's ownership interests in property that is employed in the trade or business of farming. Ownership of a farm dwelling or farm homesite does not constitute ownership of property employed in the trade or business of farming."

"Trust, partnership, or S corporation sale of farm property may be eligible for the reduced tax rate. To qualify, each individual beneficiary, partner, or shareholder (as the case may be) must meet all four tests as described in section (2) of this rule." OAR 150-316.045(12).

The administrative rule promulgated by Defendant provides additional guidance, describing the four tests in ORS 316.045(2). OAR 150-316.045(2) states: "A taxpayer's net long-term capital gain qualifies for the reduced tax rate if all four of the following tests are met:"

"(a) Asset Test. The gain is derived from either IRC section 1231 assets or an ownership interest of at least 10 percent in an entity.

"(b) Use Test. The property that was sold consisted of:

"(A) An ownership interest in an entity engaged in the trade or business of farming; or

"(B) Property that was predominantly used in the trade or business of farming.

"(c) Relationship Test. The assets are not sold to a related taxpayer as defined under IRC section 267.

"(d) Termination Test. The sale is a substantially complete termination of all of the taxpayer's ownership interests in:

> "(A) A trade or business engaged in farming; or
>
> "(B) Property that is predominantly used in the trade or business of farming."

"In interpreting a statute, the court's task is to discern the intent of the legislature." *PGE v. Bureau of Labor and Industries* (*PGE*), 317 Or 606, 610, 859 P2d 1143 (1993); ORS 174.020. Legislative intent is determined first from the text and context of the statute. *PGE*, 317 Or at 611; *State v. Gaines* (*Gaines*), 346 Or 160, 171, 206 P3d 1042 (2009). "[A]fter examining text and context," the court may consider legislative history that "appears useful to the court's analysis." *Gaines*, 346 Or 172; *see also* ORS 174.020(3). The court must interpret the applicable administrative rule using the same method adopted in *PGE*. *Boardman Tree Farm, LLC v. Morrow County Assessor*, TC 4990 (Sept 20, 2011), *citing Abu Adas v. Employment Dept.*, 325 Or 480, 485, 940 P2d 1219 (1997).

Plaintiff has the burden of proof and must establish his case by a preponderance of the evidence. ORS 305.427. A "[p]reponderance of the evidence means the greater weight of evidence, the more convincing evidence." *Feves v. Dept. of Revenue*, 4 OTR 302, 312 (1971). In an income tax appeal, this court has authority to determine the correct amount of the deficiency, "even if the amount so determined is greater or less than the amount of the assessment determined by the Department of Revenue[.]" ORS 305.575.

Plaintiff presented persuasive evidence that the sale of the Helms Bros property satisfies the requirements of ORS 316.045(2)(a)-(c), described as the asset test, the use test, and the relationship test. Defendant did not present any evidence or argument in rebuttal of Plaintiff's persuasive evidence. Plaintiff testified that the Helms Bros property was property was leased by Helms Bros to Green Delta for farming; thus it was "used in the trade or business" of Helms

Bros. IRC § 1231; ORS 316.045(2)(b).[3] "Farming" is defined to include "[r]aising, harvesting and selling crops." ORS 316.045(1)(a)(A). The Helms Bros property was leased to Green Delta, which grew blueberries and grass and turf seed, thus it was "predominantly used in the trade or business of farming." ORS 316.045(2)(b); *see also* OAR 150-316.045(4).[4]

ORS 316.045(2)(c) requires that "[t]he sale or exchange is to a person who is not related to the taxpayer under section 267 of the [IRC]." *See also* OAR 150-316.045(5) ("The gain from the sale of an asset does not qualify for the reduced tax rate if the asset is sold to a related taxpayer under IRC section 267 even if all of the other three tests are met.") IRC section 267(b)(1)-(13) identifies relationships that would prevent the application of ORS 316.045 to the sale of the Helms Bros property. Plaintiff testified that the Helms Bros property was sold to Riverbend Organic Farms, which is unrelated to Plaintiff or any of the Helms entities, and there is no evidence to the contrary.

The primary dispute between the parties concerns the "termination test" in ORS 316.045(2)(d). The court begins with the text of ORS 316.045(2)(d), which states, in part:

> "The sale or exchange constitutes a substantially complete termination of all of the taxpayer's ownership interests in a trade or business that is engaged in farming or *a substantially complete termination of all of the taxpayer's ownership interests in property that is employed in the trade or business of farming*."

(Emphasis added.) OAR 150-316.045(1) provides applicable definitions:

---

[3] All references to the Internal Revenue Code (IRC) and accompanying regulations are to the 1986 code, and include updates applicable to 2007.

[4] Example 5 in OAR 150-316.045(4) supports the conclusion that leasing the Helms Bros property to Green Delta for blueberry and grass and turf seed farming meets the "use" test:

> "Example 5: Deborah sold 20 acres of land. While she owned the land, she leased out 15 acres to a farmer who grew crops. She used the remaining 5 acres as a motor cross training area where she ran a business giving riding lessons and charging people to use it for practice. Assuming Deborah meets the other three tests, the 15 acres used for farming qualifies for the reduced tax rate. If Deborah had used the 5 acres for personal use instead of a separate business, she still would qualify for the reduced tax rate on the 15 acres used for farming."

"(a) "Substantially complete termination" means the taxpayer is:

"(A) No longer involved, directly or indirectly, in a trade or business engaged in farming, or

"(B) *No longer owns, directly or indirectly, property used in the trade or business of farming*.

"(b) 'A trade or business engaged in farming' means a distinct farming operation separately run from the taxpayer's other businesses. Businesses that share employees, equipment, buildings, or land are not separate businesses. Businesses that share records, accounts, registration, identification numbers, or a business name are also not separate businesses."

(Emphasis added).

Here, the "property that is employed in the trade or business of farming" is the Helms Bros property, which was sold to Riverbend in September 2009. There is no evidence that Helms Bros, Plaintiff, or another Helms entity retained any interest in the Helms Bros property after the September 2009 sale. The parties stipulated that "[n]either [Plaintiff], Steve E. Helms, Steve C. Helms, nor any Helms related entity has operated any form of farming business from the Helms Bros' real estate at any time after the Sale Date." (Stip Facts at 2; *see also* Ptf's Ex 6.) Thus, the court finds that the sale of the Helms Bros property was "a substantially complete termination of all of [Plaintiff's] ownership interests in property that is employed in the trade or business of farming" within the meaning of ORS 316.045(2)(d).

Defendant argues that, because Green Delta continued to engage in farming activities after the September 2009 sale of the Helms Bros property, the sale was not a "substantially complete termination" under ORS 316.045(2)(d) and OAR 150-316.045(6). The administrative rule provides several examples to illustrate the application of the "termination test." The parties dispute whether Example 9 supports Plaintiff's position:

"Example 9: Bill and Sharon owned a dairy operation and a hops farm. The two businesses were completely separate. They had separate employees, equipment, and records. The two businesses also had different names, records, and federal

identification numbers. Bill and Sharon sold the dairy farm. After selling all of their dairy equipment and dairy cows (Holstein), they realized a capital gain of $350,000. They decided not to sell the hops farm. Their gain on the sale of the dairy operation qualifies for the reduced tax rate. Even though Bill and Sharon still own the hops farm, they have sold their entire dairy business."

At the outset, the court notes that Example 9 appears to be illustrative of the first clause of ORS 316.045(2)(d), which refers to "a substantially complete termination of all of the taxpayer's ownership interests in *a trade or business* that is engaged in farming[.]" (Emphasis added.) The second clause, relied on by the court in this analysis, refers to "a substantially complete termination of all of the taxpayer's ownership interests in *property* that is employed in the trade or business of farming." (Emphasis added.) Use of the word "or" suggests that the two clauses are alternative requirements. The sale at issue is of property; thus, it is likely irrelevant whether the sale of the Helms Bros property "constitutes a substantially complete termination of all of the taxpayer's ownership interests in a trade or business that is engaged in farming."[5] Even if Example 9 is applicable, however, Helms Bros and Green Delta were "completely separate."

It is clear from the evidence and testimony that Helms Bros and Green Delta had "different names, records, and federal identification numbers." Plaintiff testified that Green Delta owned its own equipment that was used in the blueberry and grass and turf farming operation, much of which was sold to Riverbend in September 2009. He testified that Helms Bros had, at some time prior to the September 2009 sale, leased older farm equipment to Green Delta; however, Green Delta had purchased all the newer equipment. The court finds that Helms Bros and Green Delta were separate entities with distinct business activities: Helms Bros leased

---

[5] The structure of ORS 316.045(2)(b) supports this interpretation of subpart (2)(d). ORS 316.045(2)(b) states: "The property that was sold or exchanged consisted of: (A) Ownership interests in a corporation, partnership or other entity that is engaged in the trade or business of farming; *or* (B) Property that is predominantly used in the trade or business of farming." (Emphasis added.)

real property used for farming; Green Delta grew blueberries and grass and turf seed. Even though Green Delta continued as "a business engaged in farming," after the September 2009 sale of the Helms Bros property, Helms Bros' sale of its farm property was a "substantially complete termination of all of the taxpayer's ownership interests in property that is employed in the trade or business of farming." ORS 316.045(2)(d).

The court finds that the September 2009 sale of the Helms Bros property, excluding the farm residence and 1.1 acre homesite, meets the requirements of ORS 316.045(2). Crouch presented persuasive evidence that the value of the farm residence and 1.1 acre homesite was $200,000 as of September 2009. The parties stipulated to the original cost of the Helms Bros property; the total farm basis of the Helms Bros property was $1,517,479. (Ptf's Ex 29.) The court accepts Doman's calculation of the $3,867,489 total gain on the sale of the Helms Bros property, excluding the $200,000 value of the farm residence and 1.1 acre homesite. (*Id.*) Thus, Plaintiff's gain on the September 2009 sale of the Helms Bros property was $1,933,745 for the farm property and $100,000 for the farm residence and 1.1 acre homesite.[6] (*Id.*) Plaintiff's gain of $1,933,745 is subject to the five percent farm capital gain rate under ORS 316.045.

### III. CONCLUSION

After carefully considering the evidence and testimony, the court finds that the September 2009 sale of the Helms Bros property, excluding the farm residence and 1.1 acre homesite, met the requirements of ORS 316.045(2). Thus, Plaintiff's gain of $1,933,745 from the sale of the Helms Bros property is subject to the five percent farm capital gain rate under ORS 316.045. Plaintiff realized an additional gain of $100,000 on the sale the Helms Bros property that is not subject to the five percent rate under ORS 316.045. Now, therefore,

---

[6] The parties stipulated that Plaintiff "is not eligible for the exclusion of gain from the sale of a principal residence under IRS 121 for the sale of any residence on the subject property." (Stip Facts at 2.)

IT IS THE DECISION OF THIS COURT that Plaintiff realized a gain of $1,933,745 from the September 2009 sale of the Helms Bros property that is subject to the five percent farm capital gain rate under ORS 316.045.

IT IS FURTHER DECIDED that Plaintiff realized an additional gain of $100,000 from the September 2009 sale of the Helms Bros property that is not subject to the five percent rate under ORS 316.045.

Dated this ____ day of August 2012.


_____
ALLISON R. BOOMER
MAGISTRATE

*If you want to appeal this Decision, file a Complaint in the Regular Division of the Oregon Tax Court, by mailing to: 1163 State Street, Salem, OR 97301-2563; or by hand delivery to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your Complaint must be submitted within 60 days after the date of the Decision or this Decision becomes final and cannot be changed.*

*This document was signed by Magistrate Allison R. Boomer on August 10, 2012. The Court filed and entered this document on August 10, 2012.*