IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

EVERGREEN AGRICULTURAL ENTERPRISES, INC., )
)
)
Plaintiff, ) TC-MD 101181B
)
v. )
)
YAMHILL COUNTY ASSESSOR, )
)
Defendant. ) **DECISION**

Plaintiff appeals Defendant's disqualification from farm use special assessment of 19.92 acres of farmland (subject property) identified as Tax Lot Number R4423 01400 for the 2010-11 tax year. A trial was held in the Tax Courtroom on June 23, 2011, and a second hearing was held by telephone on November 29, 2011, on the limited issue of OAR 150-308A.113. W. Scott Phinney (Phinney), Attorney at Law, appeared on behalf of Plaintiff. Brian Crowe (Crowe), president of Plaintiff, testified on behalf of Plaintiff. Plaintiff also called Susan DeBolt (DeBolt), Residential/Farm Appraiser for Defendant, as a witness. DeBolt appeared on behalf of Defendant. At trial on June 23, 2011, Defendant did not call any witnesses. DeBolt testified on behalf of Defendant at the hearing on November 29, 2011.

Plaintiff did not offer any exhibits. During trial on June 23, 2011, Defendant offered as "rebuttal" exhibits five photographs obtained from Google.com and an aerial map. Plaintiff objected based on Defendant's failure to exchange those documents pursuant to Tax Court Rule-Magistrate Division (TCR-MD) 10 and lack of foundation. DeBolt stated that the documents were not exchanged in compliance with TCR-MD 10 C(1) due to an "oversight." TCR-MD 10 C(1) states in pertinent part: "Unless otherwise set by the court, all exhibits must be either postmarked at least 14 days before the trial date or physically received at least 10 days before the

trial date." TCR-MD 10 D states that "[a] magistrate may exclude any evidence received after the time of exchange, sanction a party who withholds information, or use any other measure the magistrate considers appropriate." The court excluded Defendant's exhibits.

At the telephone hearing on November 29, 2011, on the limited issue of OAR 150-308A.113, Defendant offered a "Summary of Case" and Exhibits A through P. Defendant's Exhibits were timely exchanged. Plaintiff objected to Defendant's Exhibits A, B, E, G, H, and J through P as irrelevant to the limited issue presented. Plaintiff did not object to Defendant's Exhibits C, D, F, and I. The court excluded Defendant's Exhibits A and B, which pertain to annexation and have no relevance to the applicability of OAR 150.308A.113. Defendant's Exhibit E includes "aerial maps" of the subject property. DeBolt stated that she brought the aerial photo labeled Exhibit E page 23 with her on the March 15, 2010, site inspection. The court allowed Defendant's Exhibit E page 23 and excluded the remainder of Exhibit E. The court excluded as irrelevant Defendant's Exhibits G and H, disqualification notices for parcels not at issue in this appeal, and Defendant's Exhibits J through P, none of which pertain to actions taken by Defendant prior to disqualifying the subject property from special assessment.[1]

## I.  STATEMENT OF FACTS

The subject property is located in the northwest corner of Tax Lot Number R4423 01400 near the Yamhill River and north of the water park in an Exclusive Farm Use (EFU) Zone.

A.      *Disqualification of the subject property*

DeBolt testified that she was the farm appraiser assigned to the subject property in this case and that she visited the subject property on March 15, 2010, and July 21, 2010. DeBolt

---

[1] Defendant's Exhibits J through P include notes from a July 19, 2010, phone call from Plaintiff's employee regarding the disqualification, notes and photographs from a second inspection on July 21, 2010, and documents exchanged subsequent to the commencement of this appeal.

testified that she was first led to believe that no farming activity was occurring on the subject property because of aerial photos showing what appeared to be dumping on the subject property. DeBolt testified that, during the March 15, 2010 site inspection, she was accompanied by Rob Graper, an employee of Defendant; she took notes and photographs of the subject property. (*See* Def's Ex C, D.) DeBolt testified that she observed "no evidence of any kind of farming activity; no livestock, meaning no droppings, no water trough, no overgrazing; the ground was in pretty bad shape; and there was no fencing." She testified that she brought an aerial photo of the subject property and maps to the inspection. (*See* Def's Ex E at 23.)

DeBolt testified that, after inspecting the subject property, she returned to the office and made notes in her computer. She testified that, based on her observations during the March 15, 2010, site visit and the aerial photo of the subject property, she determined that the subject property should be disqualified from farm use special assessment due to lack of use. DeBolt testified that the subject property was disqualified from farm use special assessment on May 21, 2010, when she sent the request for disqualification to "Eileen" at the "Tax Department." (*See* Def's Ex F.) DeBolt testified that Exhibit F is a screenshot of the May 21, 2010, computer entry disqualifying the subject property, including handwritten notes dated "5-21-10" from DeBolt to "Eileen" and handwritten notes dated "7/14" from Eileen. (*Id.*) DeBolt testified that she took no other actions between March 15, 2010, and the disqualification on May 21, 2010. She testified that she did not contact or attempt to contact Plaintiff between March 15, 2010 and May 21, 2010, or prior to July 13, 2010, the date the disqualification notice was mailed to Plaintiff.

DeBolt testified that she visited the subject property again on July 21, 2010, this time joined by three representatives of Plaintiff: Doug McCain, David Weeks, and Susan Wagner-

/ / /

Baldwin. DeBolt testified that she observed no evidence of farm activity. She testified that she had not visited the subject property prior to 2010.

Defendant's Answer, filed October 27, 2010, included a document identified as Exhibit 1, requesting production of documents labeled one through nine. (Def's Answer at 2.) Among other items requested, Exhibit 1 to Defendant's Answer requests "the present and past use of the land on these acres and the dates of this use for the last 5 years, if none please indicate 'none.' " (*Id.*) DeBolt testified that the purpose of the requests was to determine what income, if any, was produced through farm activities on the subject property.

B.      *Farm use of the subject property*

Crowe testified that he leased and personally farmed the majority of Plaintiff's farm land, including the subject property, from 2005 through 2007. Prior to 2005, the property was farmed by a different person who grazed cattle on the subject property. Crowe testified that, in 2004 and 2005, he served as "farm manager." Crowe testified that he did not lease the subject property after 2007; he farmed it directly for Plaintiff. Crowe testified that, beginning in 2007, Plaintiff kept sheep on the subject property. Crowe testified that two other individuals were hired by Plaintiff in 2007 as "animal people" to manage the flock of sheep. Crowe testified that, in 2008 and 2009, he was an hourly employee of Plaintiff who helped out with the sheep, seeding, and other farm projects. Crowe testified that he became president of Plaintiff in 2010.

Crowe testified that, during 2008 and 2009, there were 30 to 40 sheep kept on the subject property, but only for approximately three weeks at a time due to overgrazing. Crowe testified that, in 2010, four rams were kept on the subject property for approximately three months, but he could not recall which months. He testified that it was necessary to segregate the rams from the rest of the flock. Crowe testified that the sheep were originally used for both wool and meat. He

testified that the majority of the sheep were sold in spring 2010, because it was no longer profitable to keep sheep; the last of the sheep were sold in 2011. Crowe testified that there is a fence around part of the subject property; during the years that sheep were kept on the subject property, blackberry vines served to prevent the sheep from exiting through unfenced portions.

Crowe testified that he intended to plant winter wheat during fall 2010, but could not due to weather conditions affecting the subject property. He testified that he planted oats during spring 2011. Crowe testified that, during 2010, the blackberry vines were cleaned up a bit to maintain the borders of the subject property and to prepare the subject property for wheat, oats, and grass seed, which Crowe characterized as "low dollar cash crops" that provide some income, albeit not much. Phinney characterized 2010 as a "transition year" from sheep to wheat and oats.

Crowe testified generally concerning his farming practices on the subject property. During winters, he planted a cover crop to mitigate the effects of flooding and prevent soil erosion. He testified that letting land lay fallow is a standard farming technique. Crowe testified that he never intentionally left the subject property fallow. In 2005, the subject property was left fallow because he "did not have time to get to it" and, in 2006, the subject property was left fallow because it was very wet; he did mow down the subject property in 2006. He testified that the subject property is lower quality farmland because it is very wet.

Crowe testified that, during 2010, dirt was dumped on to the subject property. He testified that dumping the dirt on the subject property did not make any difference with respect to the quality of the soil. DeBolt questioned Crowe about the "dumping" during 2010; she observed what appeared to be construction debris and concrete dumped onto the subject property. Crowe testified that "straight dirt" was dumped, not construction debris; the dirt that was dumped included a "shale clay mix," a white clay soil found deeper in the soil.

II. ANALYSIS

The two issues presented in this case are, first, whether Defendant complied with the requirements of ORS 308A.113 and OAR 150-308A.113 when it disqualified Plaintiff from special assessment; and, second, whether the subject property was in farm use within the meaning of ORS 308A.056. If Defendant did not comply with the disqualification procedures required by OAR 150-308A.113, than Defendant's disqualification of the subject property was not valid and the court need not address the second issue of farm use. Plaintiff has the burden of proof and must establish its case by a preponderance of the evidence. ORS 305.427.[2] A "[p]reponderance of the evidence means the greater weight of evidence, the more convincing evidence." *Feves v. Dept. of Revenue*, 4 OTR 302, 312 (1971).

OAR 150-308A.113(1) requires the county assessor to take several actions prior to disqualifying EFU land from farm use special assessment based on the discovery of non-use:

> "(a) Before Exclusive Farm Use (EFU) land is disqualified from farm use assessment due to discovery by the assessor that the land is no longer being devoted to a farm use, the assessor must:
>
> > "(A) Make a reasonable effort to contact the owner, owner's agent or person using the land;
> >
> > "(B) Make a site inspection of the property; and
> >
> > "(C) Request the recent history of the property's use.
>
> "(b) The assessor must make a record of the inspection that includes when the inspection was made, who made the inspection, copy of contact letter(s) or record of other means of contact, information from the person contacted, and notations of the conditions found. Notations about the conditions found may include the farm uses being made of the property, areas having no apparent farm use, vegetation on the property and its condition, whether the property is fenced and the fence's condition, and other conditions of the property that indicate a farm use or lack of

---

[2] All references to the Oregon Revised Statutes (ORS) and to the Oregon Administrative Rules (OAR) are to 2009.

farm use. The record of inspection must be retained in the assessor's office for at least three years."

The Regular Division of this court recently addressed the issue of whether a county assessor complied with the "inspection" and "record-keeping" requirements of OAR 150-308A.113. *See Boardman Tree Farm, LLC. v. Morrow County Assessor* (*Boardman*), TC No 4990 at 6 (Sep 20, 2011). The facts presented in *Boardman* are unique. At some point prior to 2008, the manager of the property at issue determined that it was no longer economically feasible to harvest trees within the time period required to meet the requirements for EFU special assessment. *Id.* at 3-4. To avoid disqualification, the manager and the county assessor "launched a cooperative effort to have the Legislative Assembly enact amendments to ORS chapters 308A and 321 during the 2009 legislative session." *Id.* at 4. That effort was not successful, so "the assessor began the process of disqualifying the [property at issue] from EFU special assessment." *Id.* Prior to disqualifying the property at issue, the assessor sent a letter to the manager requesting "precise information regarding the acreage that would no longer be eligible for special assessment" and received maps responsive to that request. *Id.* The assessor did not visit the property at issue "specifically to verify the information provided by [the] taxpayer." *Id.* at 5. However, the assessor passed by or through the property at issue "on a regular basis"; he identified 26 such dates prior to disqualification. *Id.*

The taxpayer in *Boardman* argued that the assessor failed to make a site inspection as required in OAR 150-308A.113(1)(a)(B) and failed to keep records as required in OAR 150-308A.113(1)(b), rendering the disqualification invalid. *Id.* at 6-7. The court interpreted OAR 150-308A.113 following the familiar *PGE* approach.[3] *Id.* (citing *Abu Adas v. Employment Dept.*,

---

[3] *PGE v. Bureau of Labor and Industries*, 317 Or 606, 859 P2d 1143 (1993). "[T]he court first considers the text and context of the rule, giving words of common usage their 'plain, natural and ordinary meaning.' If that analysis fails to answer the question, the court will look at the record of the rulemaking process used by the

325 Or 480, 485, 940 P2d 1219 (1997)).  The court examined the rulemaking record of OAR

150-308A.113 and found that "the department had two purposes in adopting the inspection and

record-keeping requirements of OAR 150-308A.113:  (1) to ensure that a given property is, in

fact, no longer entitled to EFU special assessment and (2) to ensure that a disqualification will be

upheld should a taxpayer choose to challenge it."  *Id.* at 9.  The court found that the assessor's

actions prior to disqualification satisfied the purposes of OAR 150-308.113(1) under the

circumstances:

> "Given the detailed information provided to the assessor by [the] taxpayer's
> agents and the prior collaboration between [the] taxpayer and the assessor, the
> assessor had no reason to doubt the veracity of the information provided by [the
> manager].  The assessor could therefore reasonably limit the scope of his
> inspection to discerning whether the information contained in [the] taxpayer's
> records clearly conflicted with the observed circumstances of the subject property.
>
> "* * * * *
>
> "Under the circumstances present in this case, the assessor's frequent
> observations of the subject property, or of portions thereof, from adjacent
> roadways satisfies the 'site inspection' requirement of OAR 150-
> 308A.113(1)(a)(B)."

*Id.* at 12.

In *Boardman*, the assessor's records included the following: "the assessor's calendar,"

identifying the dates that the assessor observed the property at issue; "a copy of the contact letter

sent to [the] taxpayer by the assessor on July 24, 2009; and a copy of the map provided to the

assessor by [the] taxpayer showing the ages of the various blocks of trees at [property at issue]."

*Id.* at 13.  Noting that "there [was] no dispute that at the time of the disqualification, the

[property at issue was] no longer eligible for EFU special assessment[,]" the court found that the

Department of Revenue's "purposes in adopting [the] rule have been satisfied" and the assessor

---

department in adopting OAR 150-308A.113."  *Boardman*, TC No 4990 at 7-8 (internal citations omitted).

"substantially complied with the record-making and record-keeping requirements of OAR 150-308A.113(1)(b)." *Id.* at 14-15.

Defendant was required to comply with all three requirements stated in OAR 150-308A.113(1)(a)(A)-(C) prior to disqualifying the subject property from farm use special assessment. It is clear that Defendant satisfied the site inspection requirement of subpart (1)(a)(B) when DeBolt visited the subject property in March 2010. However, DeBolt testified that she made no attempt to contact Plaintiff prior to disqualifying the subject property on May 21, 2010, or even prior to sending the notice of disqualification on July 13, 2010. Defendant did not request the recent history of the subject property's use until the Answer was filed with this court on October 27, 2010, long after disqualifying the subject property. The court finds that Defendant did not comply with the requirements of OAR 150-308A.113 (1)(a)(A), (C). Defendant took no actions that could conceivably satisfy the requirements of OAR 150-308A.113(1)(a)(A) or (C); Defendant made no effort to contact Plaintiff or request information concerning the recent history of use prior to disqualifying the subject property.

Defendant was also required to comply with the record-making and record-keeping requirements of OAR 150-308A.113(1)(b), which include keeping a "copy of contact letter(s) or record of other means of contact [and] information from the person contacted." The court in *Boardman* found that the assessor "substantially complied" with the record-keeping requirements of subpart (1)(b) because the purposes for the rule were satisfied; it was clear to both parties that the property at issue no longer qualified for farm use special assessment. The facts here are readily distinguishable from *Boardman*. Defendant made no attempt to contact Plaintiff prior to disqualification and Defendant's record of inspection does not include "copy of contact letter(s) or record of other means of contact." Defendant did not comply with OAR 150-308A.113(1)(b).

OAR 150-308A.113(1) required Defendant to follow certain procedures prior to disqualifying the subject property from farm use special assessment and Defendant failed to comply with several of those procedures. Defendant's disqualification of the subject property from farm use special assessment for the 2010-11 tax year is, therefore, invalid.

## III. CONCLUSION

After carefully considering the evidence, testimony, and arguments presented by the parties, the court finds that Defendant failed to comply with the requirements of OAR 150-308A.113(1) prior to disqualifying the subject property from farm use special assessment. For that reason, Defendant's disqualification of the subject property from farm use special assessment for the 2010-11 tax year is invalid. Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiff's appeal is granted.

Dated this ___ day of December 2011.

_____
ALLISON R. BOOMER
MAGISTRATE PRO TEMPORE

*If you want to appeal this Decision, file a Complaint in the Regular Division of the Oregon Tax Court, by mailing to: 1163 State Street, Salem, OR 97301-2563; or by hand delivery to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your Complaint must be submitted within 60 days after the date of the Decision or this Decision becomes final and cannot be changed.\*

*This document was signed by Magistrate Pro Tempore Allison R. Boomer on December 16, 2011. The Court filed and entered this document on December 16, 2011.*