IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

HENRY ALFRED VANINETTI, ET AL,    )
                                  )
            Plaintiff,            )    TC-MD 111106C
                                  )
        v.                        )
                                  )
JACKSON COUNTY ASSESSOR,          )
                                  )
            Defendant.            )    **DECISION**

Plaintiffs appeal Defendant's disqualification from farm use special assessment of 11.3 acres of land located on property identified as Accounts 10611298 and 10994938 (subject property) for the 2011-12 tax year. Trial in the matter was held by telephone April 24, 2012. Henry Vaninetti (Vaninetti) appeared and testified on behalf of Plaintiffs. Lorrie Williams (Williams), Appraiser II, Farm & Forest, Jackson County Assessor's Office, appeared and testified on behalf of Defendant.

Defendant's Exhibits A through L were admitted without objection.

I.  STATEMENT OF FACTS

The appeal involves 11.3 of 50 acres of land that Vaninetti farms. (Def's Ex D at 1.) Vaninetti testified that he owns approximately 550 acres of farmland, 500 acres of which he leases to another farmer. Vaninetti testified that he farms about 25 of the remaining 50 acres. Vaninetti described the 25 acres he does not farm as "riparian," explaining that there is a mile-long creek running through the property and he maintains a buffer of 40 to 50 feet on either side of that creek. It is the creek and adjoining buffer that comprise the 25 unfarmed acres of the 50 acres Vaninetti deems farmland under his control and operation. Vaninetti testified that he began farming in 1969 and has owned the subject property for approximately 15 years.

The subject property is zoned exclusive farm use (EFU), and has for some time benefited from Oregon's farm use special assessment program, one of the benefits of which is reduced property taxes. On March 25, 2011, Vaninetti completed and signed a "EFU FARM USE QUESTIONNAIRE" (questionnaire) that Defendant had sent to Plaintiffs. (Def's Ex C.) The questionnaire sought information about the use of the subject property. (*Id*.) Defendant received the completed questionnaire from Vaninetti on March 28, 2011. (*Id*. at 1.) Section B of that form asks for information about the farm use activity taking place on the property. (*Id*. at 2.) After defining "Farm Use," the form asks the property owner to "[b]riefly describe your farm use activity." (*Id*.) In response to that question, Vaninetti wrote: "Hay, Grain, [and] Fallow Rotations." (*Id*.) Vaninetti also put an "X" in the box next to the word "Yes" in response of the following two questions: "[i]s the land farmed with the intent to make a profit," and "[d]id you file this farm use income on a Schedule 'F' or other income tax form(s)?" (*Id*.) Vaninetti enclosed a Federal Form Schedule F (Profit or Loss From Farming) for 2009 with the questionnaire that he returned to Defendant. (*Id*. at 3.)

On August 12, 2011, Defendant sent notice to Plaintiffs that the property was being disqualified from special assessment "due to the farmland currently lying idle or no longer in a qualifying farm use. ORS 308A.113(1)(a)." (Def's Ex D at 1.) The notice included reference to a potential additional tax of approximately $10,209[1] stemming from the disqualification, stating that it had been "**deferred and is not collectible by the Assessor at this time.**" (*Id*.) (Emphasis in original.)

/ / /

/ / /

---

[1] The potential tax was $4,709.83 for Account 10611298 and $5,498.85 for Account 10994938.

At trial, Vaninetti complained about the potential additional tax liability, which according to the notice amounts to approximately $10,209. Vaninetti did not cite any legal authority for his position. The notice, which comports with the statutory requirements, indicates that:

> "[t]he potential additional taxes for farm use disqualifications has been deferred under ORS 308A.706(1)(a), (when farmland becomes idle and does not change to a different special assessment.) In the future, if this land changes to an incompatible use the deferred additional taxes will become collectible."

(Ptfs' Compl at 2; Def's Ex D at 1.)

Williams testified that the decision to disqualify the property occurred after two assessors reported seeing no farming in 2010 or 2011. Defendant submitted various exhibits in support of the disqualification. Exhibit B contains a file summary including the names of the appraisers who had inspected the property. Exhibit F includes five photographs of the subject property taken over a period of one and one half years. The first two photographs are date stamped "12/15/2010." (Def's Ex F at 1-2.) The third photograph is date stamped "07/21/2011." (*Id.* at 3.) The remaining two photographs are date stamped "02/29/2012." (*Id*. at 4-5.) The photographs are date stamped to show when the inspection was made and the contemporaneous conditions on those dates.

During trial, Williams testified that Vaninetti admitted that the land had lay fallow during 2010 and 2011. When pressed by the court if this was true, Vaninetti responded, "I may have said that." In response to questions specifically about his farming activity on the subject property, Vaninetti testified that, to the best of his recollection, the last time he grew and cut hay was in 2009. Vaninetti testified that he does not keep good records and really could not say when the farming last occurred.

Plaintiff argues the disqualification is invalid because Defendant did not follow the proper procedure for disqualification under ORS 308A.113(1)(a). Further, Plaintiff argues even

if the disqualification were procedurally valid, the property nonetheless qualifies for farm use special assessment as an active farm. Finally, Plaintiff contends that the potential additional tax liability is not appropriate in this case.

## II. ANALYSIS

ORS Chapter 308A contains the detailed procedural and substantive requirements for the special assessment of farmland. The analysis of whether farmland qualifies for special assessment, and, in turn, how qualified land may be disqualified depends on whether the farmland is "exclusive farm use zone farmland" or "nonexclusive farm use zone farmland." ORS 308A.053(2), (4).[2] Under ORS 308A.062(1), "[a]ny land that is within an exclusive farm use zone and that is used exclusively for farm use shall qualify for farm use special assessment * * * unless disqualified * * *." As stated above, the subject property is located within an EFU zone, and thus qualified for special assessment. *See* ORS 308A.062 and ORS 308A.053(2).

ORS 308A.113(1) provides three circumstances under which EFU land subject to the special assessment program must be disqualified from that program:

"(a) Removal of the special assessment by the assessor *upon the discovery that the land is no longer being used as farmland*;

"(b) Removal of the land from any exclusive farm use zone; or

"(c) Establishing a nonfarm dwelling on the land under ORS 215.236."

(Emphasis added.) Defendant contends that the property was "no longer being used as farmland" and thus disqualification was valid under ORS 308A.113(a). The court must determine first whether the subject property was being used as farmland. If the property was not being used as farmland, the court must then determine whether the disqualification was

---

[2] All references to the Oregon Revised Statutes (ORS) and Oregon Administrative Rules (OAR) are to 2009.

procedurally valid. Plaintiff has the burden of proof and must establish its case by a preponderance of the evidence. ORS 306.427. A "[p]reponderance of the evidence means the greater weight of evidence, the more convincing evidence." *Feves v. Dept. of Rev.*, 4 OTR 302, 312 (1971).

A.      *Whether Plaintiff's use of the subject property constituted farm use*

In order to qualify for special assessment, the subject property must be, "used exclusively for farm use * * *." ORS 308A.062. The special assessment statutes define farm use as, "the current employment of land for the primary purpose of obtaining a profit in money by * * * [r]aising, harvesting and selling crops." ORS 308A.056(1). Specifically included as a form of current employment is "[l]and lying fallow for one year as a normal and regular requirement of good agricultural husbandry." ORS 308A.056(3)(b).

Defendant provided photographs of the land dated December 15, 2010, and July 12, 2011. (Def's Ex F at 1 -3). Vaninetti stated at trial that the December 15, 2010, photographs appeared to have shown, "a good winter crop." The December photographs appear to show the subject property covered by grass. The July photographs clearly show the subject property tilled and clear of grass. Defendant's contemporaneous photographs of the subject property show the property lying fallow. Vaninetti's inconsistent explanations of the use or non-use of the property are insufficient to satisfy his burden of proof when confronted with those photographs. "Self-serving explanations and records created after the fact do not carry the same weight of persuasion as contemporaneous records maintained in the usual course of business." *Brown v. Dept. of Rev.*, 15 OTR 96, 98-99 (2000). Accordingly, the court finds that the property was not being used as farmland.

/ / /

B.      *Whether Defendant followed the procedural requirements for disqualification*

The next issue is whether Defendant's disqualification was procedurally valid. The

Oregon State Legislature has delegated authority to the Department of Revenue to "[m]ake such

rules and regulations it deems proper to regulate its own procedure and to effectually carry out

the purposes for which it is constituted." ORS 305.100(1). Accordingly, the Department of

Revenue has adopted a rule outlining the procedural requirements assessors must follow before

disqualifying EFU land from special assessment after discovering that the land is no longer being

used as farmland.

OAR 150-308A.113(1) states:

> "(1)(a) Before Exclusive Farm Use (EFU) land is disqualified from farm
> use assessment due to discovery by the assessor that the land is no longer being
> devoted to a farm use, the assessor must:
>
> "(A) Make a reasonable effort to contact the owner, owner's agent or
> person using the land;
>
> "(B) Make a site inspection of the property; and
>
> "(C) Request the recent history of the property's use.
>
> "(b) The assessor must make a record of the inspection that includes when
> the inspection was made, who made the inspection, copy of contact letter(s) or
> record of other means of contact, information from the person contacted, and
> notations of the conditions found. Notations about the conditions found may
> include the farm uses being made of the property, areas having no apparent farm
> use, vegetation on the property and its condition, whether the property is fenced
> and the fence's condition, and other conditions of the property that indicate a farm
> use or lack of farm use. The record of inspection must be retained in the assessor's
> office for at least three years."

These requirements serve the dual purposes of ensuring that disqualified land is no longer

entitled to special assessment, and that the disqualification will be upheld if challenged in this

court. *Boardman Tree Farm, LLC v. Morrow County Assessor* (*Boardman*), TC No 4990, WL

4377828 at *5 (Sep 20, 2011).

If Defendant failed to comply with the procedural requirements of OAR 150-308.A113(1), then the disqualification is invalid and the question of farm use is immaterial. In construing administrative rules, this court applies the methods of statutory interpretation set forth in *PGE v. Bureau of Labor and Industries* (*PGE*), 317 Or 606, 859 P2d 1143 (1993). *Boardman*, WL 4377828 at *4 (citing *Abu Adas v. Employment Dept.*, 325 Or 480, 485, 940 P2d 1219 (1997)). The court will first look to the text and context of the rule, giving words of common usage their "plain, natural and ordinary meaning." *PGE*, 317 Or at 611.

The first inspection requirement compels an assessor to make a reasonable effort to contact the owner. Prior to disqualifying Plaintiffs' property from the special assessment program, Defendant sent Plaintiffs the questionnaire which Vaninetti completed. (Def's Ex B.) The questionnaire listed the subject property and requested information on the use of that property. (Def's Ex C at 2.) In Section B, the form requests a brief description of the farm use activity on the subject property. (*Id*.) Vaninetti wrote, "Hay, Grain, [and] Fallow Rotations." (*Id*.)

In reviewing an agency's interpretation of its own administrative rule, this court will uphold the agency's "plausible interpretation" of that rule unless it is "inconsistent with the wording of the rule itself, or with the rule's context, or with any other source of law * * *." *Don't Waste Oregon Com. v. Energy Facility Siting*, 320 Or 132, 142, 881 P2d 119 (1994). Whether the questionnaire satisfies the first inspection requirement depends on whether it reflects, "a reasonable attempt to contact" the property owner, the agent of the property owner, or the person using the land. OAR 150-308A.113(1)(a)(A).

"Contact" is defined as, "an instance of establishing of communication with someone or of observing or receiving of a significant signal from a person or object." *Webster's Third New*

*Int'l Dictionary* 490 (unabridged ed 2002). Defendant's questionnaire was properly addressed to Vaninetti and received by him. The questionnaire elicited a response by the later of April 15 or within 30 days of receipt of the request. (Def's Ex C at 1.) Vaninetti in fact timely responded to the questionnaire. The court is satisfied that these actions constitute a reasonable attempt to contact Plaintiffs.

The second inspection requirement compels an assessor to make a site inspection of the property. Williams testified that two assessors reported seeing no farming activity during 2010 or 2011. Defendant offered five photographs of the subject property taken during visits over a period of one and one half years. (Def's Ex F.) Vaninetti did not offer evidence rebutting the photographs, and did not argue that the photographs did not constitute a "site inspection."

Formal notice to taxpayers is not required prior to an observation in order to constitute a "site inspection." *Boardman* TC No 4990, WL 4377828 at *4 . Similarly, the taxpayer need not accompany the assessor during the inspection. *See Evergreen Agricultural Enterprises, Inc., v. Yamhill County Assessor*, TC-MD 101181B, WL 6338839 (Dec 16, 2011) (holding that an assessor's first visit to the property satisfies site inspection requirement when the assessor took notes and photographs of the property). Defendant's repeated visits to the property accompanied by photographs of the property substantially comply with the requirement to conduct a site inspection under OAR 150.308A.113(1)(a)(B) given the purposes of the requirement.

The last inspection requirement compels an assessor "to request the recent history of the property's use." OAR 150.308A.113(1)(a)(C). Section B of the questionnaire requests a brief description of the farm use activity of the property. (Def's Ex C at 2.) The request defines farm use as, "the current employment of land for the primary purpose of making a profit in money."

/ / /

(*Id*.) The questionnaire then asks whether the respondent will continue the farm use activities in the future. (*Id*.)

Those questions seek to capture the present and future plans of the respondent; not the recent history of the property's use. History is retrospective. History connotes a reflection of prior events, not a contemporaneous report and projection of future events. However, the questionnaire also requests a copy of a respondent's Federal Form 1040 Schedule F, "Profit or Loss From Farming." (*Id*.) Vaninetti provided a copy of this form with his completed questionnaire. (*Id*. at 3.) Schedule F requires a taxpayer to compute their income or loss from farming activities and requests a description of the principal farming activity for that tax year. IRS 1040 Schedule F (2009).

A Schedule F necessarily represents the condition of the land as of the time the form was completed. Schedule F, as part of a 1040, is signed under penalty of perjury. Inasmuch as the questionnaire requests the form from the previous tax year, the events described on that form would have taken place in recent history. A request of the recent history of the use of farmland as reflected on a document signed by a taxpayer under penalty of perjury satisfies the requirement of OAR 150.308A.113(1)(a)(C).

Separate from the information gathering requirements, Defendant must also satisfy the record keeping requirement of OAR 150.308A.113(1)(b) for the disqualification to be valid. The inspection record must contain the following information: (1) "When the inspection was made," (2) "who made the inspection," (3) a "copy of contact letter(s) or record of other means of contact," (4) "information from the person contacted," and (5) "notations of the conditions found." OAR 150.308A.113(1)(b). In *Boardman*, the court determined that the county assessor had substantially complied with the requirements of the rule by providing the assessor's

calendar, a copy of correspondence between the parties, and a copy of a map used by the assessor in determining the qualification for special assessment. *Boardman*, WL 4377828 at \*7. The "roughly contemporaneous" map, although lacking any of the assessor's notations, satisfied the purpose of the record-keeping requirement of OAR 150.308A.113 because the record fully supported the conclusion that the property was no longer eligible for special assessment. *Id.*

The documents retained by Defendant provide the names of the appraisers who had inspected the property. They show an attempt to contact Plaintiffs and discern the current use of the property. They show the contemporaneous condition of the property over a period of one and one half years. The documents, when taken as a whole, support the conclusion that the property was no longer eligible for special assessment. Defendant has substantially complied with the record keeping requirement, and Plaintiff has not proven otherwise.

C.      *Whether the ten year potential additional tax liability was appropriate*

At trial, Vaninetti complained about the potential additional tax liability, which according to the notice amounts to approximately $10,209. Vaninetti did not cite any legal authority for his position. The notice, which comports with the statutory requirements, indicates that:

> "[t]he potential additional taxes for farm use disqualifications has been deferred under ORS 308A.706(1)(a), (when farmland becomes idle and does not change to a different special assessment.) In the future, if this land changes to an incompatible use the deferred additional taxes will become collectible."

ORS 308A.703(2) and (3) provide generally for an additional tax upon disqualification for a period of up to ten years, ten being the maximum in cases where the property was receiving special assessment for ten or more years. The subject property received special assessment for more than ten years. However, as Defendant's notice correctly indicates, that tax is not imposed where the land is "not being used as farmland" but "[i]s not being used for industrial, commercial, residential or other use that is incompatible with the purpose to return the land to

farm use." ORS 308A.706(1)(a). That statutory provision, precluding the imposition of the potential additional tax, applies to this case. Plaintiffs' challenge to that potential tax is therefore without merit.

### III. CONCLUSION

The court concludes that Plaintiffs have failed to establish by a preponderance of the evidence that the subject property, consisting of 11.3 acres of land carried on portions of two separate assessor accounts, 10611298 and 10994938, was used exclusively for farm use as defined by ORS 308A.056. The court further concludes that Defendant has satisfied the information gathering and record keeping requirements of OAR 150.308A.113(1). Finally, the court rejects Plaintiffs' objection to the imposition and deferral of the potential additional taxes because Defendant is required to take that action. Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiff's appeal is denied.

Dated this ____ day of August 2012.


_____
DAN ROBINSON
MAGISTRATE


*If you want to appeal this Decision, file a Complaint in the Regular Division of the Oregon Tax Court, by mailing to: 1163 State Street, Salem, OR 97301-2563; or by hand delivery to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your Complaint must be submitted within 60 days after the date of the Decision or this Decision becomes final and cannot be changed.*

*This document was signed by Magistrate Dan Robinson on August 8, 2012. The Court filed and entered this document on August 8, 2012.*